UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CATRINNA MILLER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-429 |
| | § | |
| CITY OF HOUSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

## I.      INTRODUCTION

Before the Court are several motions for summary judgment filed by the defendants, Harris County Deputy Constable Gregory James ("Deputy James"), individually and in his official capacity (Dkt. Nos. 77 and 80); Harris County Constable May Walker ("Constable Walker"), individually and in her official capacity (Dkt. Nos. 77 and 81); the Harris County Constables Office, Precinct Seven (Dkt. No. 77); Harris County, Texas (Dkt. No. 77); and, the City of Houston (Dkt. No. 78).  The plaintiff, Catrinna Miller, filed suit against the defendants asserting various civil rights claims under 42 U.S.C. § 1983 as well as various common law claims under Texas law.  After having carefully examined the defendants' motion, the plaintiff's responses, replies, the record, and the applicable law, the Court determines that the defendants' motions should be GRANTED.

## II.      FACTUAL BACKGROUND

On the evening of January 14, 2009, the plaintiff ran out of gas while driving her vehicle on or near the South Sam Houston Toll Road where it intersects with Telephone Road.  She was stalled in the left lane of the highway and was sitting in her vehicle behind the steering wheel

when Deputy James approached her vehicle.  Because the windows were tinted, Deputy James could not see into the car clearly.  So, he tapped on the window to get the plaintiff's attention. When she did not respond, Deputy James opened the driver's door and attempted to turn the plaintiff's face toward him while inquiring about her situation.  When Deputy James saw that the plaintiff's hand was moving, as though she was searching for something in the front seat, he removed her sunglasses demanding that she respond to his questioning.  Only then did she respond that she was out of gas.  With that response, Deputy James stepped away and called for a wrecker to remove the vehicle from the roadway.

In the meantime, the plaintiff stepped out of her vehicle and began walking toward Deputy James's vehicle.  He noticed her movement and followed her, instructing her to "get away from [his] car."  The plaintiff ignored his command and continued toward his vehicle. Deputy James attempted to move the plaintiff away from his vehicle with physical coercion and verbal commands.  She ignored his commands and a struggle ensued.

While attempting to control the plaintiff, Deputy James attempted to call for assistance. However, the plaintiff broke free and a tussle ensued sending both to the ground.  The plaintiff overpowered Deputy James, crawled away from him, and again proceeded toward his vehicle. Deputy James remembered that he had a "loaded shotgun laying on the driver's seat" and struggled with the plaintiff to get it.  In the process of attempting to disable the plaintiff, Deputy James struck her in the head with his flashlight and removed the keys from the ignition.  Because he had removed the keys from the ignition, the plaintiff was unable to drive off.  She then exited his vehicle and proceeded toward him, as he was retreating after having secured his shotgun.  As the plaintiff approached, Deputy James gave verbal commands ordering her to stop, which she ignored.  When she was within arms-length, she grabbed the shotgun barrel near the muzzle,

pulling it to her chest, then redirecting it to her head.  Deputy James, fearing that his life was in danger, pulled the trigger.  No round was in the chamber, therefore, the shotgun did not discharge.

The plaintiff turned and proceeded back to the patrol vehicle, apparently having located the keys that Deputy James had thrown to the ground.  She started the vehicle and drove away at a high rate of speed with the emergency lights flashing.  Deputy James reported the event as a stolen patrol vehicle, as he waited at the scene to be picked up.

Several police vehicles chased the plaintiff in the area of Beltway 8 and Interstate 10 near North Wayside as she sped down the Interstate.  She eventually crashed into a tractor/trailer vehicle that had been stopped on the freeway by Houston Police officers.  She careened from that crash into another vehicle that was also stopped, causing that vehicle to crash into a third vehicle before she came to a complete -stop.  The plaintiff was apprehended, handcuffed and transported to Ben Taub Hospital.

III.     CONTENTIONS OF THE PARTIES

A.     The Plaintiff's Contentions

The plaintiff contends that the City of Houston and Harris County violated common law in that its conduct, setting up a roadblock, was negligent.  Officers for the City attempted to stop the plaintiff after she took Deputy James' patrol vehicle.  Toward that effort, Houston police officers stopped other vehicles on the Interstate essentially blocking all lanes of traffic.  Efforts were also underway to set portable spikes in a designed lane that would cut the tires on Deputy James' stolen vehicle.  The plaintiff contends that this conduct, attempting to set portable spikes and setting a roadblock with other vehicles, created such a dangerous situation that it "shocks-the conscience."  Hence, she argues the City of Houston's conduct was negligent in its design

and implementation of its policies, procedures and guidelines in violation of the Texas Tort Claims Act.

Against Deputy James, Constable May Walker, and Harris County, Precinct Seven, the plaintiff asserts violations of 42 U.S.C. § 1983. In this regard, the plaintiff asserts that Deputy James assaulted her. As well, she asserts that the physical assault included sexually assaulting her by inappropriate grabbing and touching her. Against Constable Walker and Harris County, the plaintiff asserts that there are no policies regarding pursuit, roadblocks, the use of portable spikes, "force of pursuit," or communications that govern a constable's conduct during a pursuit. In this regard, the plaintiff asserts that the defendants were deliberately indifferent to her Fourth Amendment right to be free from unpromulgated and unregulated conduct. The plaintiff's Fourth Amendment claim against these defendants also encompasses a failure to implement policies and procedures that address how persons suffering with mental health disorders should be handled in similar circumstances. Finally, the plaintiff asserts that Constable Walker and Harris County failed to train and supervise its officers. Such failure, she contends, constitutes deliberate indifference to her constitutional rights as a person suffering a mental health disorder.

Concerning Harris County, the plaintiff asserts that deputy sheriffs of Harris County directed and pursued her, forcing her into the vehicle barricade, thereby causing her to be injured. And, as the final policymaker for Precinct Seven, Harris County does not have in place policies regarding pursuit, roadblocks, use of portable spikes, "force of pursuit" and communications that govern officers' conduct during a pursuit. Hence, by setting up a roadblock on the occasion, Harris County acted with deliberate indifference to the plaintiff's Fourth and Fourteenth Amendment rights. As well, Harris County failed to implement policies and procedures for assessing and handling persons with mental health disorders. Finally, the plaintiff

argues that Harris County, along with the City of Houston, shares responsibility for violating her common law rights for the negligent conduct of the officers in setting up a dangerous roadblock.

### B.     The Defendants' Contentions

Generally, the defendants deny that the plaintiff has asserted cognizable causes of action against them.  Specifically, they assert that the plaintiff has failed to adequately plead a cause of action under § 1983.  There is no evidence, they assert, that the defendants established a state-created danger, that such a cause of action shocks-the-conscience or even exists under state or federal law.  Moreover, the defendants assert, they enjoy sovereign and qualified immunity from the plaintiff's suit.  Finally they argue, the plaintiff has failed to produce expert evidence in support of her claims that the municipal and governmental entities failed to enact policies and procedures concerning roadblocks for handling the mentally infirmed and for properly training their officers.  Hence, the defendants argue that they are entitled to a summary judgment because no admissible evidence exists to support the plaintiff's claims that any of their alleged failures violated her federal constitutional rights.

## IV.    LEGAL STANDARDS

### A.     SUMMARY JUDGMENT

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative,

summary judgment should be granted.  *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006).  Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."  Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164.  To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998).  In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

### B.    QUALIFIED IMMUNITY

Under the qualified immunity doctrine, governmental officers are safeguarded "from civil liability for damages based upon the performance of discretionary functions if [their] acts were objectively reasonable in light of then clearly established law." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001)).  The qualified immunity doctrine has essentially evolved to provide "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475

U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed.2d 396 (1982)).  "When a defendant invokes [the] qualified immunity [defense], the burden is on the plaintiff to demonstrate the inapplicability of the defense."  *Atteberry*, 430 F.3d at 253 (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)).

The Fifth Circuit has set forth a two-step analysis to govern the determination of whether a governmental officer is entitled to qualified immunity.  First, a court must determine "whether the facts, either as the plaintiff alleges or as proved without dispute, establish that the officer violated a clearly established constitutional right."  *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004) (citing *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001)).  "If no constitutional right has been violated, the inquiry ends and the defendants are entitled to qualified immunity."  *Id.*  If, however, the plaintiff has alleged a violation of a clearly established constitutional right, the court must next examine "whether the [defendants'] conduct was objectively unreasonable under established law."  *Linbrugger*, 363 F.3d at 540 (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)); *accord Atteberry*, 430 F.3d at 253.  The Fifth Circuit "has repeatedly held that objective reasonableness in a qualified immunity context is a question of law for the court to decide, not an issue of fact."  *Atteberry*, 430 F.3d at 256 (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999) (stating that "objective reasonableness is a matter of law for the courts to decide, not a matter for the jury") (other citations omitted).

V.      **ANALYSIS AND DISCUSSION**

A.      **The Harris County Constables Office's Capacity to Be Sued.**

The plaintiff names the "Harris County Constables Office, Precinct Seven" as a co-defendant in this case.   However, in accordance with Rule 17(b) of the Federal Rules of Civil Procedure, in order to be sued, a party must have the capacity to sue or be sued.   *See* Fed. R. Civ. P. 17(b); *see also Maxwell v. Henry*, 815 F. Supp. 213, 215 (S. D. Tex. 1993).   Whether an entity, such as the Harris County Constables Office, Precinct Seven, has the capacity "to sue or to be sued is 'determined by the law of the state in which the district court is held.'"   *Paredes v. City of Odessa*, 128 F. Supp.2d 1009, 1013 (W.D. Tex. 2000) (citing Fed. Rule Civ. P. 17(b); *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991)).   "In Texas, county sheriffs and police departments generally are not legal entities capable of being sued, absent express action by the superior corporation (the county, in the case of the sheriff's department) 'to grant the servient agency with jural authority.'"   *Jacobs v. Port Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (citing *Darby*, 939 F.2d at 313) (other citations omitted).   The Fifth Circuit has also held that "[i]n order for a plaintiff to sue a city [or county] department, [that department] must 'enjoy a separate legal existence.'"   *Darby*, 939 F.2d at 313 (internal citations omitted).

Here, it is undisputed that the Harris County Constables Office, Precinct Seven, is merely an agency or division of Harris County.   The plaintiff has failed to set forth facts establishing that it enjoys a separate legal existence apart from Harris County or that it has been granted with jural authority.   Thus, the Court determines that the Harris County Constables Office, Precinct Seven, is not a legal entity under Rule 17(b) and therefore, lacks the legal existence and capacity

to be sued for the violations alleged.  As such, the plaintiff's claims against it must be dismissed as a matter of law.

### B.        The Defendants' Motions for Summary Judgment

In this case, the plaintiff has asserted § 1983 claims against the defendants.  As a threshold matter, she seeks to hold the City of Houston, Harris County, and Constable Walker responsible for Deputy James's actions under a municipal liability theory, insinuating that Deputy James acted in accordance with their practice, custom, policy and/or procedure in violation of her Fourth and Fourteenth Amendment rights to the federal Constitution.  Generally, municipalities are not liable for the constitutional torts of their employees unless those employees act pursuant to an official action or approval.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 663 n. 7, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Rather, to impose liability, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur."  *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).  Therefore, in order to assert a claim for municipal liability under § 1983, a plaintiff must establish "proof of three elements in addition to the underlying claim of a violation of rights:  'a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom.'"  *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 748 (5th Cir. 2005) (citing *Piotrowski*, 237 F.3d at 578) (internal citation omitted).  In order to demonstrate a causal link between the municipal action and the deprivation of constitutional rights, "a plaintiff may demonstrate either an express policy or a 'persistent, widespread practice of city officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'"

*Hinojosa v. Butler*, 547 F.3d 285, 296 (5th Cir. 2008) (citing *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)).

First, the plaintiff has not identified a policy or custom upon which her claim might rest nor has she offered any indication of a persistent widespread practice.  Hence, a claim that a defendant acted or failed to act on a policy cannot exist in the absence of an identifiable policy or custom that causes or permits a federal constitutional violation.  Nevertheless, assuming that the plaintiff contends that the absence of a policy gave rise to her claim, there is no evidence, beyond the plaintiff's pleadings and conclusory allegations, that the City of Houston and/or Harris County would or should have handled events differently had a policy or custom been adopted. Specifically, beyond the appearance of deputy constables on the scene after officers for the City of Houston attempted to set-up a roadblock, there is no evidence of participation on their part. And, because there is no basis in law for one governmental entity to be liable for another governmental entity's conduct, the City of Houston's officers' conduct cannot be attributed to Harris County.  *See Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016, 105 S. Ct. 3476, 87 L. Ed.2d 612 (1985) ("[I]solated unconstitutional actions by municipal employees will almost never trigger liability[,]" as municipal liability under § 1983 cannot be predicated on a theory of *respondeat superior*.))

Further, to the extent that the plaintiff claims that the City of Houston and Harris County's conduct constitutes a "state-created danger", the Fifth Circuit has repeatedly rejected claims premised on this theory.  *See Doe ex rel. Magee v. Covington Cnty. Sch. Dist ex rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012) (discussing previous cases that declined to adopt the theory). It, nevertheless, has provided instruction on the requirements necessary to assert such a claim.

To establish a claim under this theory, the Fifth Circuit advises that a plaintiff must demonstrate that "the defendants used their authority to create a dangerous environment for the plaintiff and that the defendants acted with deliberate indifference to the plight of the plaintiff." *Scanlon v. Tex. A&M Univ.*, 343 F.3d 533, 537 - 38 (5th Cir. 2003). To "establish deliberate indifference, the plaintiff must show the 'environment created by the state actors [was] dangerous; they must know it is dangerous; and . . . they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.'" *Id.* at 538 (quoting *Piotrowski*, 237 F.3d at 585. Based on the evidence contained in the record, the Court determines that the plaintiff's state-created danger theory and/or shocks-the-conscience claim fails as a matter of law. The evidence adduced here indicates that the danger created was caused by the plaintiff's *own* making—her illegal flight from Deputy James in his stolen patrol car and the high-speed pursuit that ensued thereafter. No evidence presented demonstrates that any of the officers willfully disregarded the plaintiff's safety as she fled the scene and collided with other private vehicles. Therefore, the City of Houston and Harris County are entitled to judgment as a matter of law on the plaintiff's state-created danger theory and/or her shocks-the-conscience claim premised on the same allegations. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 854, 118 S. Ct. 1708, 1720 (1998) (holding that a shocks-the-conscience claim will not stand in high-speed chase cases where there is no indication that there was intent to harm the suspect or worsen the suspect's plight.)

As well, any claim of deliberate indifference based on the absence of a policy or custom fails. Here, the plaintiff must prove that the absence of a policy is a disregard for a known or obvious need resulting in consequences that were deliberately ignored. *See Estate of Davis ex. Rel. McCully v. City of North Richland Hills*, 406 F.3d, 375, 381 (5th Cir. 2005); *see also Rhyne*

*v. Henderson Cnty.*, 973 F.3d 386, 392 (5th Cir. 1992).  The events of January 14, 2009, were at best isolated, unanticipated, and not subject to repetition.  *See, e.g.*, *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) ("proof of deliberate indifference generally requires a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights'"); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) ("proof of a single violent incident ordinarily is insufficient" for liability; a plaintiff must show "at least a pattern of similar incidents") (internal citations omitted).

Likewise, a claim for failure to train and/or supervise law enforcement officers fails. First, there is no evidence that deputy constables participated in any alleged illegal conduct at the scene of the crash.  Without such evidence, there is no basis upon which such a claim might rest. Next, the evidence reveals that the plaintiff had an opportunity to avoid colliding with the 18-wheeler but failed to do so.  In no event, however, did spikes on the road play a role in the plaintiff's collision.  Finally, the evidence fails to show that the plaintiff was capable of following the instructions given by law enforcement.  She admits in her deposition that she was under the influence of "male" voices that were directing her activities.

The fact that the plaintiff lacked control of her mental faculties is further supported by the testimony of an expert who examined the plaintiff.  According to the mental health expert, the plaintiff manifested symptoms of schizophrenia, bipolar disorder and depression.  The plaintiff admits that her mental illness resulted in the loss of memory and that her memory is hazy or blurred.  Moreover, as a result of her mental condition, the criminal charges against the plaintiff were dismissed.  Hence, the Court concludes that the evidence fails to establish a pattern of conduct on the part of law enforcement officers based on a policy or practice, or the absence of the same, that violated the plaintiff's constitutional rights.

Further, the defendants are entitled to a summary judgment on all of the plaintiff's state-law claims, including her claims for common law negligence and those arising under the Texas Torts Claims Act ("TTCA").  *See Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 - 43 (Tex. 2003); *see also Perez v. City of Dallas,* 180 S.W.3d 906, 910 (Tex. App.–Dallas 2005, no pet.) (citing Tex. Civ. Prac. & Rem. Code §§ 101.021, 101.022)).  Similarly, the plaintiff's claims for exemplary damages against the defendants are precluded as a matter of law.

### C.      Immunity from Individual Liability

Constable Walker, in her individual capacity, moves for summary judgment on the plaintiff's claims on the grounds of qualified immunity.  The evidence is undisputed that Constable Walker was not personally involved in the events of January 14.  Nor is there evidence that she was present at the scene of events or that she otherwise participated.  Moreover, the record is devoid of any competent summary judgment evidence establishing that:  (1) she inadequately supervised and/or trained Deputy James; (2) a causal relationship existed between her failure to train and/or supervise and the plaintiff's alleged constitutional deprivations; and (3) her failure to train or supervise amounted to gross negligence or deliberate indifference to the possibility of a known constitutional violation.  In sum, there is just no evidence that she may have promulgated a relevant written policy with deliberate indifference toward the plaintiff's protected constitutional rights.  Therefore, there is no basis to assume that any action or inaction on her part, violated a clearly established constitutional or statutory right of which a reasonable person would be aware.  *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982).  Constable Walker is entitled to judgment as a matter of law on the plaintiff's claims.

With regard to the claims against Deputy James, in his individual capacity, the evidence establishes that he is also entitled to qualified immunity.  The plaintiff testified that her conduct

on the occasion was dictated by the voices in her head.  The Court may, therefore, assume that when the plaintiff attacked Deputy James, refused to obey his orders, grabbed his shotgun first pointing it to her chest then to her head, and appropriated his vehicle without his permission that she did so in obedience to [those "male voices]".  A reasonable person could conclude that the plaintiff posed a danger to Deputy James' and to herself.  Therefore, he was correct to use such force as was necessary to repel the plaintiff's aggression.  A review of the evidence reveals that the plaintiff does not dispute the testimony of Deputy James or his account of events at the scene.

Finally, the plaintiff alleges that she was the subject of a sexual assault first, by Deputy James.  She further contends that she was subsequently raped at the crash scene by another unidentified law enforcement officer.  However, to date, she has neither identified the officer who allegedly raped her nor has she produced evidence that the rape kit prepared at Ben Taub Hospital evinces that a sexual intercourse occurred.  Without evidence of a rape and a perpetrator, the plaintiff's claim of rape at the scene of the crash fails.

Equally, the plaintiff's claim that Deputy James sexually assaulted her while they struggled at the stalled car scene also fails.  Here, the plaintiff claims that while Deputy James had her pinned down on her stomach, he touched her inappropriately as they wrestled over control of his vehicle.  Deputy James admits that he wrestled with the plaintiff until she broke free.  He states that he pinned her against her car on one occasion after she stepped out of her car.  However, he testified that the plaintiff began struggling and fighting as he tried to hold her and simultaneously radio for help.  When he could not control her, they fell to the pavement, where they wrestled while Deputy James called for assistance.  Eventually, the plaintiff broke free and crawled to the police car.  The two struggled again at Deputy James' vehicle while he was removing his shotgun from the passenger seat.  The plaintiff then exited the vehicle and came

after Deputy James.  The plaintiff does not dispute Deputy James' version of events at the scene.

Nowhere is there any reference to conduct beyond that necessary to subdue her.  And, only at the

time that she filed her suit does the sexual assault claim surface.  Thus, the Court determines that

this claim fails as a matter of law.

**VII.   CONCLUSION**

Therefore, the Court concludes that the plaintiff's suit fails for a lack of evidence to

support her claims.  The defendants' motions for summary judgment are hereby GRANTED.

It is so ORDERED.

SIGNED on this 29th day of November, 2013.

_____
KENNETH M. HOYT
UNITED STATES DISTRICT JUDGE